Filed 11/26/14  Weakly v. Edmunds CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MARILYN WEAKLY, | D062678 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2012-00100616-CU-HR-CTL) |
| GINNY EDMUNDS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gale E. Kaneshiro, Judge.  Affirmed.

Ginny Edmunds, in pro. per., for Defendant and Appellant.

Law Offices of Darren J. Quinn and Darren J. Quinn for Plaintiff and Respondent.

In the course of a contentious marital dissolution dispute, which included a civil action initiated by defendant and appellant Ginny Edmunds (Ginny)[1] against her former husband, his mother and his girlfriend, a confrontation occurred at the girlfriend's home.

---

1       First names are used for ease in identifying the parties; no disrespect is intended.

Shortly after the confrontation, at a hearing with respect to dismissal of Ginny's civil complaint, Ginny advised counsel for her former husband that she was "getting a gun." In response to this statement, Ginny's former mother-in-law and her husband's girlfriend each filed separate requests for a restraining order against Ginny, including an order that she not own or possess a firearm.

The trial court granted both requests, and Ginny appealed both orders. Her appeal from the order entered in favor of her former mother-in-law was dismissed. She now appeals from the order entered in favor of her husband's girlfriend, plaintiff and respondent Marilyn Weakly (Marilyn). We affirm. Contrary to Ginny's arguments on appeal, there is sufficient evidence to warrant the order entered in favor of Marilyn.

FACTUAL AND PROCEDURAL HISTORY

As we indicated, Ginny and her former husband, Michael Caldwell (Michael), have been engaged in a lengthy marital dissolution dispute since 2003. According to Ginny, Michael has been hiding community assets from her and, in an effort to diminish his support obligation to her and their children, has been concealing the nature of his relationship with Marilyn. Ginny believes Michael and Marilyn have been sharing the proceeds of businesses Michael controls and have been living as man and wife. Ginny asserted in the trial court that, in light of these circumstances, she needed to investigate Marilyn's living situation and her financial relationship with Michael.

In May 2012, Ginny's investigation of Marilyn included two trips to Marilyn's home, which is located on a privately owned street, where Ginny was seen going through Marilyn's trash. On the May 1, 2012 visit, Ginny knocked on Marilyn's door and

2

questioned Marilyn's housekeeper about Marilyn's whereabouts, Michael's whereabouts and the housekeeper's schedule. Ginny videotaped the conversation. On May 22, 2012, Marilyn's neighbors once again saw Ginny going through Marilyn's trash, and they called police. On the same day, Michael's 82-year-old mother, Lea Caldwell (Lea), reported that Ginny began questioning her while she was walking in the neighborhood where Marilyn lives and that she went to a neighbor's garage and felt trapped there by Ginny until a neighbor took her to a friend's home. According to Ginny, during the May 22, 2012 incident, two cars drove up next to her and would not let her leave. A third car driven by Michael also arrived. Ginny felt frightened by this response and called 911 herself.

At a June 4, 2012 ex parte hearing held with respect to the civil action Ginny brought against Michael, Lea and Marilyn, Ginny told their attorney that she was going to "get a gun" and that in fact she had been advised by police to do so. At the ex parte hearing, counsel also noted that Ginny sat on the floor instead of in a chair and that this behavior gave rise to concerns about Ginny's mental health.

Following the ex parte hearing, Marilyn and Lea each filed a request under Code of Civil Procedure[2] section 527.6, subdivision (b)(3) for a restraining order against Ginny. The trial court conducted a joint hearing on the two requests. At the hearing, Marilyn stated that Ginny's harassment of her had been going on for a lengthy period of

---

[2]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

3

time and that, in 2009, the harassment caused Marilyn to move away from a home she shared with Michael. Marilyn further stated that Ginny's conduct had caused her a great deal of emotional distress. Marilyn's attorney also related his concern about what he believed was Ginny's deteriorating mental state.

For her part, Ginny testified that she believed she had the right to investigate Marilyn's relationship with Michael. She also testified that she had been frightened by the May 22, 2012 incident and that a police officer advised her to get a gun to protect her home. She denied telling Marilyn's counsel she was going to purchase a gun to use against his clients. She explained that she sat on the floor during the ex parte hearing because of a back spasm she was experiencing.

The trial court granted the requested orders. With respect to Marilyn, the order prevents Ginny from: coming within 100 yards of Marilyn, going through Marilyn's trash, and owning or possessing a firearm. The order has a term of three years. The trial court also awarded Marilyn $2,400 in attorney fees. Ginny filed a timely notice of appeal.[3]

## DISCUSSION

Section 527.6 permits someone who has been harassed to obtain a restraining order preventing the harassment. Section 527.6, subdivision (b)(3) defines harassment as follows: "'Harassment' is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys,

---

[3] In separate proceedings following entry of the restraining order, the trial court determined that Ginny is a vexatious litigant.

or harasses the person, and that serves no legitimate purpose.  The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."

"In assessing whether substantial evidence supports the requisite elements of willful harassment, as defined in Code of Civil Procedure section 527.6, we review the evidence before the trial court in accordance with the customary rules of appellate review.  We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value.  [Citations.]"  (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.)

Contrary to Ginny's argument on appeal, there is sufficient evidence to support the trial court's determination that she harassed Marilyn within the meaning of section 527.6 subdivision (b)(3).  Marilyn's testimony to Ginny's long history of harassment, her interrogation of Marilyn's housekeeper, her repeated searches through Marilyn's trash and her statements to counsel about acquiring a gun, are ample evidence of annoying and threatening conduct that would cause a reasonable person to suffer substantial distress as well as evidence that in fact Marilyn suffered substantial distress.  We note in particular that Ginny's search through Marilyn's trash is a violation of San Diego Municipal Code section 66.0402.  Ginny's need to establish the nature of Marilyn's relationship with Michael did not excuse her violation of law or her invasion of Marilyn's privacy.

We recognize that Ginny challenges the credibility of the evidence Marilyn

5

presented. The weight and credibility of the evidence Marilyn presented was a matter for the trial court to determine and where, as here, the trial court could rationally rely on that evidence, we may not disturb its implied determination that the evidence was credible. (See *Schild v. Rubin*, *supra*, 232 Cal.App.3d at p. 762.) In particular, we see no error in the trial court admitting the statements of Marilyn's counsel with respect to what Ginny told him at the ex parte hearing. Ginny's statements were not hearsay in that they were not admitted for the truth of whether Ginny was in fact going to get a gun. Rather, they were admitted and relevant with respect to Ginny's state of mind at the time she made the statements and the impact of those statements on Marilyn's state of mind. (See *People v. Ortiz* (1995) 38 Cal.App.4th 377, 389.) We note also that, for her part, Ginny did not dispute the substance of what counsel related: that Ginny had been told by police that she should get a gun.[4]

Ginny also complains that the trial court declined to review a tape of what occurred at the May 22, 2012 incident, which she offered. In light of Ginny's own concession that she went to Marilyn's home more than once, searched through Marilyn's trash can and did speak to Marilyn's counsel about getting a gun, the trial court acted well within its discretion in declining to consider additional cumulative evidence of the nature of Ginny's continuing conduct toward Marilyn.

---

[4]     Ginny also contends that she asked the trial court for assistance in obtaining testimony from the police officer who told her to get a gun. This contention is not supported by any citation to the record, and we have not been able to find any such request in the record on appeal.

DISPOSITION

The judgment is affirmed.  Marilyn to recover her costs of appeal and her attorney fees.5

BENKE, Acting P. J.

WE CONCUR:

McDONALD, J.

IRION, J.

---

5      Section 526.7, subdivision (r) permits an award of reasonable attorney fees to the prevailing party in any action brought under the statute.  On remand, Marilyn may present the trial court with a memorandum of costs setting forth the reasonable attorney fees she incurred on appeal.  Ginny may challenge the amount of attorney fees requested, but not Marilyn's right to them, by way of a motion to tax costs.